The Western Union Telegraph Company *v.* Davis.
The Western Union Telegraph Company *v.* Duncan.

Simmons, C. J.—In both of these cases the evidence, fairly interpreted, shows that the defendant exercised at least ordinary diligence in forwarding the messages, and that the delay in getting them to destination was not, under the circumstances, unreasonable or negligent. In the first case the verdict rendered in the county court in favor of the plaintiff for the statutory penalty was contrary to law and the evidence, and ought to have been set aside. In the second case the finding in the county court in the defendant's favor was right and ought to have been sustained.

February 27, 1895.        *Judgment in each case reversed.*

Action for penalty. Before Judge Bartlett. Houston superior court. April term, 1894.

Davis sued the telegraph company in the county court, for failure to deliver a message sent by him from Macon to his wife at Perry. He obtained a verdict for the penalty of $50, which was sustained on *certiorari.*

From the evidence for plaintiff the following appeared: The message was delivered at the office in Macon between two and three o'clock on July 25th. It was received by Mrs. Davis on the next day between eleven and twelve o'clock. Defendant had an office in Macon and one at Perry, and had wires connecting the offices. Mrs. Davis lived within the incorporate limits of Perry and within 500 yards of the telegraph office. The message was received by Moore, the operator at Perry, between nine and ten o'clock on July 26th. The wire between Perry and Fort Valley was not working from seven o'clock on July 25th until nine or ten o'clock the next day. Moore did not know what the matter was, and could get no communication on the wire at all. A message from Macon to Perry had to be first sent to Fort Valley and transferred from there to Perry. A very few minutes after the wire commenced to work, as soon as it began to work well, Moore received this mes-

sage and one for Dr. Bunn, copied them, and gave them to one Smith for delivery. This was shortly after ten o'clock on July 26. He saw Smith start off with them immediately, he thought. He wrote Rogers, the agent and telegraph operator for the railroad at Fort Valley, a letter which went on the 1:45 train, July 25, that the wire was not working. He (Moore) had discovered that morning, between seven and eight o'clock, that the wire was not working, but did not notify Rogers by the morning train, because he thought the trouble was that the keys were open at Fort Valley and they would shut them back as they had done before; he did not know what was the matter. It frequently happens that from some cause the wire fails to work for an hour or two, and then again begins to work of itself; and Moore thought every few minutes this would be so. Smith testified, that when the telegrams were given to him he started out at once, delivering the Bunn message first and then going straight to Mrs. Davis and delivering the message to her, the distance to her house, the way he went from the depot (going by to deliver the Bunn message), being about a mile and a half. He thought he delivered the message to her about a quarter of eleven o'clock.

For defendant the testimony was to the following effect: The message was received by Joiner, its operator at Fort Valley, about two o'clock on the 25th, and was sent by him to Perry between nine and ten o'clock on the 26th. The reason he did not send it until the 26th was because the wire was down and he could not. The trouble with the wire was in the railroad office in Fort Valley; there was no trouble in defendant's office there. The wire would not work at all after this message was received in Fort Valley on the 25th, and when Joiner reached his office at eight o'clock the morning of the 26th, he tried the wire and it was still out of fix. When

he found the wire was working he sent the message. He went to the railroad office to see if he could find out what the trouble was. Rogers was in the railroad office, and they tested the wire and saw it was in that office. It would not work either way, east or west. Rogers said he would hunt for the trouble. Joiner did not remember whether he (Joiner) reported the trouble over the wire or not, and did not remember whether he notified the lineman to come the first day or not. He found the instrument would work, and sent the message in two or three minutes after. Defendant's wire from Perry to Fort Valley passes through the railroad office on its way to defendant's office in Fort Valley. When Joiner on the 25th asked Rogers about the wire, Rogers went to his switch-board, tested it and found the trouble was local, but did not know what was the matter, did not know what to do; was not a line-repairer; did not know anything about the business of the line-repairer, and did not know where to go. On the 26th, between nine and ten o'clock, the line-repairer was in Fort Valley in Rogers' office, at work on the wire. Rogers supposed it might have been possible for him or the other operator to have found the trouble in the office if they had known where to look, or had known anything about that department, but they knew nothing about it; it was not their duty to know anything about it; there is a man hired and trained for that business. The line repairer lives at Smithville, and has seventy-five or eighty miles of line. He visits Rogers' office regularly on an average of twice a month, as often as is necessary. Rogers testified that the line repairer was in his office between nine and ten o'clock on the 26th; and afterward testified that he did not know when the line repairer came that day; was not thoroughly positive he was there, but thought he was there; did not know who notified the repairer, but he (Rogers) did not; the letter

from Moore was the first notice he had of the trouble; the train from Perry got to Fort Valley about three o'clock, and he got the letter, and then Joiner came, may be at three or four o'clock. If Rogers had devoted an hour and a half hunting for the trouble, it is possible he might have found it; it was no great trouble about fixing the wire after it was found. An expert operator might have fixed the wires if he could have found where the trouble was, but Rogers did not know where to look. There are four instruments in his office. He did not think it would have been possible to connect one of these instruments with the Perry wire, because the wire goes through a relay before it touches the switch-board, and the relay was the one that was broken. Rogers knows nothing about this, as he knows nothing about this department. He further testified: "We could take an instrument from one wire and put it to another, if it was in good repair. I could take another instrument and connect with the Perry wire and work the Perry wire, but I did not have another instrument but what does forty times as much work as the Perry wire, and I could not afford to swap instruments. I keep no extra instrument."

In the *Duncan* case the circumstances of the delay in forwarding the message were the same as in the Davis case; but the following appears from the testimony: The message was delivered at the Fort Valley office for transmission to Perry, at 3:30 o'clock on July 25th. Joiner had found out at two o'clock that his line to Perry would not work. During the afternoon he went to the railroad office, and with Rogers (who had received Moore's note that the wire would not work) tested the Perry wire, found that the trouble was in the railroad office, and that the instrument would not work. This instrument could easily have been detached and one put in its place that was all right. Joiner had nine instru-

ments in his office. Neither he nor Rogers made any examination to find out what the trouble was; that was the lineman's business, not theirs; neither of them notified the lineman or the authorities that the instrument was out of order; the lineman, if notified, could not have reached there until the next day at 10:20 o'clock. Rogers did not know what the trouble was nor where to look for it. At 8 o'clock that day the wire was still down ; at 9:15 o'clock Joiner found that it had come up, and immediately sent the message to Perry. It was sent out by Smith with the message to Mrs. Davis, and was delivered to Bunn, the sendee, at 10.45 o'clock, July 26th. The other facts in evidence are shown by the foregoing statement of the *Davis* case.

GUSTIN, GUERRY & HALL, for plaintiff in error.

W. C. DAVIS, J. P. DUNCAN and HARDEMAN, DAVIS & TURNER, *contra.*